UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 26-mj-58 (NEB/DTS) |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **GILLIAN ETHERINGTON'S** |
| | ) | **MOTION TO SUPPRESS EVIDENCE** |
| GILLIAN ETHERINGTON, | ) | |
| | ) | |
| Defendant. | ) | |

Gillian Etherington, by and through her attorney, moves this Court, to suppress evidence as a result of an unconstitutional stop, seizure and arrest.

On January 7, 2026, at around 4:00 pm Ms. Etherington began to follow a 5-7 vehicle convoy of unmarked United States Border Patrol vehicles. Body Worn Camera videos and interviews of the Border Patrol Agents involved in this incident show that the BPAs were annoyed that Ms. Etherington was following them. The BPAs complained about being followed and complained about Ms. Etherington's driving conduct. While many of the BPAs were equipped with BWCs, possessed smart phones, and GoPro cameras, very little of Ms. Etherington's driving conduct was captured on video.

As Ms. Etherington followed the convoy of unmarked vehicles the BPAs decided to confront Ms. Etherington. To this end the BPAs stopped the vehicle convoy in the middle of the road in the Nokomis neighborhood of Minneapolis. As the Border Patrol vehicles came to a stop, blocking all traffic, a number of BPAs wearing tactical gear, exited the vehicles and approached Ms. Etherington's vehicle. In response to the stop, BWC

1

footage shows Ms. Etherington reverse her vehicle and turn down another road. The BPAs then returned to their vehicles and resumed driving.

A short time later Ms. Etherington's vehicle was spotted following the Border Patrol vehicles again. The BPAs made the decision to stop Ms. Etherington, this time with the intent to use the Border Patrol vehicles to box her in. A few minutes after the decision to stop Ms. Etherington was made, BPAs were able to position their Border Patrol vehicles in front and behind Ms. Etherington's vehicle. The Border Patrol vehicles then stopped Ms. Etherington's vehicle by boxing her vehicle in the middle of the road. As BPAs exited the vehicle, Ms. Etherington tried to drive around the Border Patrol vehicle stopped in front of her. As she passed the Border Patrol vehicle stopped in front of her, she bumped the Border Patrol vehicle and continued to drive away. The Government has produced no reports identifying any damage to the Border Patrol vehicle.

As Ms. Etherington drove from the scene, BPAs reentered their vehicles and began a pursuit of Ms. Etherington that ended when Border Patrol vehicles rammed into her vehicle bringing her to a stop in front of Roosevelt High School. BPAs immediately swarmed Ms. Etherington's vehicle with firearms drawn and broke both door windows of Ms. Etherington's vehicle before forcibly removing her from her vehicle.

An arrest is lawful when the facts are sufficient to lead "a person of reasonable caution to believe that an offense... had been committed by the person to be arrested." *See United States v. Kelly*, 329 F.3d 624, 628 (8th Cir. 2003). In this case, at the time the BPAs attempted to stop Ms. Etherington there was not particularized suspicion that she had forcibly interfered with or impeded federal law enforcement officers in the

2

course of their duties. *United States v. McLemore*, 887 F.3d 861, 865 (8th Cir. 2019) ("[A]s the Supreme Court's governing standard demands,... the determination of reasonable suspicion is fact specific, requiring the government to establish that the officer had a 'particularized and objective basis for suspecting the particular person stopped of breaking the law.'") (quoting Heien v. North Carolina, 574 U.S. 54, 60 (2014)).

And relevant to the facts of this case, Counsel can find no law or statute that prohibits citizens from safely following law enforcement officers performing their duties in non-emergency situations. Simply following BPAs does not support reasonable suspicion of a violation of § 111. *Cf. United States v. Schrader*, 10 F.3d 1345, 1348 (8th Cir. 1993) ("Force is a necessary element of any § 111 violation.... [T]hat element may be satisfied by proof of actual physical contact, or by proof of such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death.") (quotation omitted). When the BPAs made the initial decision to stop and confront Ms. Etherington, there had been no contact by Ms. Etherington with any Border Patrol vehicle. As for the second attempt to stop Ms. Etherington, that attempt resulted in only minor contact with a Border Patrol vehicle after the BPAs attempted to box her vehicle.

While the Government may argue that Ms. Etherington's driving conduct was violative of Minnesota traffic laws, Ms. Etherington submits that federal immigration enforcement officers do not have any authority to enforce Minnesota traffic laws. The scope of BPAs' authority is rooted in the Immigration and Nationality Act (INA), Pub. L. 82-414 (1952), *codified as amended at* 8 U.S.C. Ch. 12, §§ 1101-1537. And USBP's

enforcement and search-seizure authority is cabined by the INA as well. *See, e.g.,* 8 U.S.C. § 1357.

A vehicular stop constitutes a Fourth Amendment seizure, and hence the general rule is that any such stop must be supported by probable cause or reasonable suspicion that the operator has violated a particular law, in this case the INA. *United States v. Linnell,* 93 F.4th 1102, 1105 (8th Cir. 2024). The general rule is subject to certain narrowly drawn exceptions, including the "border search exception" by which federal border control officers are authorized "to conduct routine searches and seizures *at the border*, without probable cause or a warrant." *United States v. Xiang,* 67 F.4th 895, 897 (8th Cir. 2023) (citation omitted).

However, the narrow border exception *does not* extend to "roving patrols" and associated vehicular stops, conducted by BPAs upon inland roads. *Almeida-Sanchez v. United States,* 413 U.S. 266, 273 (1973). The vehicular seizure of Ms. Etherington was conducted upon inland roads and not "at the border" or its functional equivalent. *See, e.g., United States v. Singh,* 415 F.3d 288, 294 (2d Cir. 2005) ("Although the investigatory stop in the case before us was along a road extending along the border, we note that it was conducted by a roving patrol, not at a checkpoint, and was on a road with significant domestic traffic."). The Supreme Court has instructed that immigration officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country. *United States v. Brignoni-Ponce,* 422 U.S. 873, 884 (1975).

4

Accordingly, the stop of Ms. Etherington may be deemed lawful only to the extent justified by a reasonable suspicion of an INA violation.  The Government bears the burden to prove the BPAs possessed the requisite reasonable suspicion to effect a warrantless stop. *United States v. Andrews,* 454 F.3d 919, 922 (8th Cir. 2006).  Under *Brignoni-Pence,* the Government simply cannot make that claim in this case.

Because the BPAs lacked probable cause that Ms. Etherington was violating section 111 or was transporting aliens who may have been in the country illegally, the BPAs did not have legal authority to stop, seize, or arrest her.  If the BPAs truly believed Ms. Etherington was violating Minnesota traffic laws, they should have contacted local law enforcement.  The BPAs decision to act outside of their scope of legal authority constitutes an illegal act requiring suppression of evidence and dismissal of this case.

Dated:  March 5, 2026.                    Respectfully submitted,

                                          *s/ Aaron J. Morrison*
                                          _____
                                          AARON J. MORRISON
                                          Attorney ID No. 0341241
                                          Attorney for Ms. Etherington
                                          107 U.S. Courthouse
                                          300 South Fourth Street
                                          Minneapolis, MN 55415